**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**UNDER SEAL**

FILED

TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

# 17165

UNITED STATES OF AMERICA,
ex rel. MATILDA J. BRUMFIELD,

        Plaintiffs,

v.

        CASE NO. 2:05-0756

HEARTLAND OF CHARLESTON
and MANOR CARE, INC.,

        Defendants.


## COMPLAINT FOR DAMAGES AND INJUNCTIVE
## RELIEF UNDER THE FALSE CLAIMS ACT

Filed In Camera pursuant to 31 U.S.C. § 3730(b)(2).


Plaintiffs, the United States of America ("United States") ex rel. Matilda J. Brumfield ("Mrs.

Brumfield"), through their attorneys, Allen Guthrie McHugh & Thomas, PLLC, hereby file this

Complaint against Defendants Heartland of Charleston ("Heartland") and Manor Care, Inc. ("Manor

Care") (jointly referred to as "Defendants"), and hereby allege as follows:


## NATURE OF THE CASE

1.    This is a civil action brought by the United States for damages and penalties under

the False Claims Act, as amended, 31 U.S.C. §§ 3729 to 3733.  Relator, Mrs. Brumfield, acting on

behalf of the United States, brings this civil action under the qui tam provisions of the False Claims

Act and claims entitlement to a portion of any recovery obtained by the United States as qui tam

plaintiff pursuant to 31 U.S.C. § 3730.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 31 U.S.C. §§ 3730(b) and 3732(a).

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1392(c) and under 31 U.S.C. § 3732(a) in that Defendants have transacted business in this district at all times material to this action and continue to transact business in this district, and in that the claims set forth in this Complaint arose in the Southern District of West Virginia.

4.     As required under the False Claims Act, 31 U.S.C. § 3730(a)(2), the Relator, Mrs. Brumfield, has provided the Attorney General of the United States and the United States Attorney for the Southern District of West Virginia with a statement of all material evidence and information related to this Complaint.

## PLAINTIFFS

5.     Plaintiffs are the United States and Relator, Mrs. Brumfield. The United States files this Complaint on behalf of the Department of Health and Human Services ("DHHS") as the Secretary of DHHS funds the Medicaid program through the State of West Virginia.

6.     Relator, Mrs. Brumfield, is a citizen of the United States and a resident of the State of West Virginia. From August of 1994, through March of 2004, Mrs. Brumfield was employed by Defendant Heartland of Charleston as an assistant in the accounts receivable department.

2

## DEFENDANTS

7.    Defendant Manor Care is a corporation organized pursuant to the laws of the State of Delaware with its principle place of business in the State of Ohio.  Manor Care lists its business address as 333 N. Summit Street, P.O. Box 10086, Toledo, Ohio 43699-0086.  Manor Care has been known previously under several different names, including HCR Manor Care, Inc., Manor Care of America, Inc., Health Care & Retirement Corporation, and Health Care and Retirement Corporation of America.  In fact, as of the date of this Complaint, Manor Care is still registered with the West Virginia Secretary of State under the name Health Care and Retirement Corporation of America.

8.    Manor Care provides a range of health care services, including skilled nursing care, assisted living, subacute medical and rehabilitation care, hospice care, home health care, and rehabilitation therapy.  However, the most significant portion of Manor Care's business consists of long-term care, specifically, skilled nursing care and assisted living services.

9.    Manor Care owns and operates Defendant Heartland, a 184-bed skilled nursing and intermediate care facility located at 3819 Chesterfield Ave., Charleston, West Virginia 25304, as well as numerous other long-term care centers throughout the United States.

10.    Upon information and belief, Manor Care, directly or through its subsidiaries, establishes operating policies and procedures for Heartland, along with overseeing and monitoring Heartland's implementation of those policies and procedures through, among other methods, periodic audits and risk management assessments.

11.    Furthermore, upon information and belief, because Heartland received an unsatisfactory score on a recent internal audit, which was conducted in order to determine whether

3

prescribed internal control policies were being followed and assets safeguarded, Manor Care has been taking an even more active role in overseeing Heartland's operations than it does under normal circumstances.

## FACTUAL ALLEGATIONS

12.    Heartland is operated as an inpatient nursing home facility in Charleston, West Virginia, providing long-term nursing care and services to Medicaid beneficiaries.

### The Medicaid Program

13.    Enacted in 1965 and jointly funded by Federal and State governments, Medicaid is a program that provides medical long-term care assistance, including nursing home care, to people with low income and resources. The Health Care Financing Administration ("HCFA"), administers Medicaid on the federal level. Within broad federal rules, however, each state decides who is eligible for Medicaid, the services covered, the payment level for services, and the administrative and operational procedures. Each state directly reimburses health care providers for services rendered, with the state obtaining the federal share of payment from accounts which draw on funds of the United States Treasury. 42 C.F.R. §§ 430.0 to 430.25. The federal share of each state's Medicaid program varies state-by-state.

14.    The State of West Virginia, through its Department of Health and Human Resources, participates in the Medicaid program.

15.    At all times relevant to this Complaint, the United States provided funds to the State of West Virginia's Department of Health and Human Resources through the Medicaid program, pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. Under this system,

4

enrolled health care providers are eligible to be reimbursed for covered medical services they provide to Medicaid recipients. By participating in Medicaid, enrolled health care providers agree to abide by the rules, regulations, polices, and procedures governing reimbursement, and to keep and allow access to records and information required by Medicaid. Additionally, in order to receive Medicaid funds, enrolled health care providers, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the State of West Virginia's Department of Health and Human Resources.

### Eligibility for Nursing Home Care Under Medicaid in West Virginia

16.    According to the rules and regulations promulgated by the West Virginia Department of Health and Human Resources, an individual is eligible for Medicaid assistance for nursing home care if: (1) the individual's assets and income are below certain levels and (2) nursing home care is a medical necessity.

17.    An individual's income and assets are calculated on the first day of the month, with money being considered income in the month that it is received and an asset if it is retained for more than one month.

18.    Assets are limited to $2,000 for an individual and $3,000 for a couple. Certain assets, however, are excluded in determining eligibility for Medicaid. These assets include life insurance with a face value of less than $1,500, funds up to $1,500 designated for a burial, funds set aside for burial space, an automobile within certain limits, and equity in a home provided that it is the individual's principle place of residence. In addition, if an individual has a spouse living outside the

5

nursing home, under the Medicare Catastrophic Coverage Act of 1988 ("MCCA"), assets are instead determined by totaling all countable resources of both spouses and then dividing them equally. Furthermore, the spouse living outside of the nursing home may be entitled to a protected amount of the institutionalized spouse's income.

19.     Income is not limited, as long as it is less than the monthly Medicaid reimbursement rate for the nursing home facility in question. The monthly Medicaid reimbursement rate is the portion of an individual's bill that Medicaid will pay to the long-term care facility for a given month's services. To illustrate, a nursing home bill may be $8,000 for a given month; however, Medicaid will only pay for a portion of that bill, for instance, $6,000, which would be referred to as the monthly Medicaid reimbursement rate.

20.     If an individual's income for a month is in excess of the monthly Medicaid reimbursement rate, he is not Medicaid eligible and must privately pay for that month's nursing home care. For example, if the monthly Medicaid reimbursement rate for a facility was $6,000 and an individual had more than $6,000 in income for a month, that individual would not receive Medicaid and, instead, be privately responsible for that month's nursing home bill. As soon as an individual's monthly income fell below the monthly Medicaid reimbursement rate, and the individual had assets under $2,000, he would once again become eligible for Medicaid.

21.     If an individual's income for a month is less than the monthly Medicaid reimbursement rate, he is Medicaid eligible for that month. For example, if the monthly Medicaid reimbursement rate for a facility was $6,000 and an individual had $2,000 in income for a month, that individual would be eligible to receive Medicaid for that month.

22.     However, an individual who is eligible for Medicaid may still have to contribute a

6

portion of his monthly income to the cost of his nursing home care.

23.    An individual's contribution to the cost of his care, commonly referred to as his "resource amount," is determined by beginning with the individual's monthly income and then subtracting any allowable deductions. Permissible deductions include a personal needs allowance of $50, a community spouse maintenance allowance, a family maintenance allowance, outside living expenses, and non-reimbursable medical expenses. The amount of income remaining, after all permissible deductions, is the individual's required contribution or resource amount for a given month.

24.    The nursing home facility collects the resource amount from the individual and collects the balance between the monthly Medicaid reimbursement rate and the individual's contribution or resource amount from the West Virginia Department of Health and Human Resources Medicaid Office.

25.    When an individual's assets or income exceed permissible amounts, it is the responsibility of the enrolled health care provider to notify the West Virginia Department of Health and Human Resources Medicaid Office within ten days.

26.    In addition, to determine Medicaid eligibility, a pre-admission screening form is used to ascertain whether nursing home care is a medical necessity for an individual. This form is to be completed and signed by a physician and updated if changes in the individual's medical condition occur.

## Defendants' False and Fraudulent Medicaid Claims

27.    Defendants were at all relevant times, and continue to be, participating Medicaid

7

providers who submit claims to Medicaid for nursing home services.

28.    The Medicaid program constitutes a significant source of gross revenue for Defendants. According to Manor Care's Form 10-K, filed with the United States Securities and Exchange Commission for the fiscal year ending December 31, 2004, thirty-one percent of Manor Care's revenues in 2004, consisted of payments received from Medicaid for skilled nursing, assisted living, and rehabilitation services, while in 2003 and 2002, Medicaid payments accounted for thirty-three percent of Manor Care's revenues. Manor Care's revenues for the years 2004, 2003, and 2002, were $3,208,867,000, $3,029,441,000, and $2,905,448,000, respectively.

29.    Manor Care understands and recognizes the importance of complying with Medicaid rules and regulations. Specifically, Manor Care acknowledges that, under the False Claims Act provisions of 31 U.S.C. § 3729, its filing of false or fraudulent Medicaid claims could result in civil money penalties. In addition, Manor Care notes that failure to comply with Medicaid rules and regulations could also result in exclusion from the Medicaid health care program and criminal convictions, thus, negatively impacting the company's business.

30.    In fact, Manor Care is acutely aware of the consequences of failing to comply with government health care programs, considering that in 2004, it entered into an $8.4 million settlement of a "review" conducted by the Office of the Inspector General of the Department of Health and Human Services focusing on Medicare cost reports filed by several of the company's facilities.

31.    After commencing her employment at Heartland, Relator, Mrs. Brumfield, learned that Heartland was submitting false and fraudulent claims for payment to the West Virginia Department of Health and Human Resources Medicaid Office by: (1) hiding resident assets so that residents would remain eligible for Medicaid despite having income or assets in excess of allowable

8

amounts and (2) submitting claims on behalf of residents who had not been properly designated as requiring nursing home care as a medical necessity.

## False and Fraudulent Hiding of Resident Assets

32.     Heartland has concealed, and on information and belief, continues to conceal, resident assets so that residents will remain eligible for Medicaid benefits despite having income or assets in excess of allowable amounts. Specifically, Heartland has created an accounting system whereby Heartland places money received on behalf of a resident into its own Accounts Receivable, rather than, the Resident Trust Account whenever a particular Resident Trust Account is in danger of exceeding Medicaid's asset limits.

33.     When an individual is first admitted to Heartland, the resident is given the option of placing his money in a Resident Trust Account. In actuality, the Resident Trust Account is a single, interest bearing account, with each resident having an individual account ledger.

34.     In general, by setting-up a Resident Trust Account, an individual gives Heartland the authority to handle his financial affairs. Heartland then applies to be the payee for the resident's sources of income, including social security, retirement, and black lung compensation. Accordingly, the resident's checks begin to arrive at the facility in Heartland's name for the resident (i.e.: "Heartland for Ms. Jane Doe").

35.     When a resident who receives Medicaid benefits for nursing home care is not in danger of exceeding Medicaid income or asset limits, Heartland places any money received on behalf of that resident into the Resident Trust Account. Then, the trust fund clerk writes Heartland a check, drawn on the Resident Trust Account, for that resident's contribution to the cost of his care or

9

resource amount.

36.    However, there are certain circumstances in which residents are at risk for exceeding Medicaid income or asset limits.

37.    For example, when a resident does not use his monthly $50 spending allowance, the money accumulates eventually causing the asset limit to be exceeded.

38.    The most common way in which a resident risks exceeding Medicaid income and asset limits is when the resident becomes eligible to use his Medicare benefits. For instance, if a resident spends at least three days in the hospital, he becomes eligible to use his Medicare benefits for services provided in the 100 days following the hospital stay, including services provided upon return to a nursing home facility. Because the resident is using his Medicare as opposed to Medicaid benefits, he does not have to make a contribution to the cost of his care (pay his usual resource amount) during this time. Thus, when the resident's Medicare benefits are exhausted, the money that he would have ordinarily been spending as a resource amount has accumulated to an extent that causes him to have assets in excess of Medicaid limits.

39.    When one of these circumstances occur and a resident exceeds asset limits, the resident cannot collect Medicaid benefits and must pay his nursing home bill from private funds. Although a resident's assets exceed Medicaid limits, in most cases, his assets still fall short of the total private pay amount due to Heartland. Thus, if the resident's private funds were used to pay Heartland, it would receive less money than if it had received the Medicaid payment for that resident.

40.    In order to avoid having a resident become ineligible for Medicaid benefits, and thus, maximize the money collected by Heartland, when a resident begins to approach Medicaid's asset limitation, the facility ceases to put funds received on behalf on that resident into the individual's

10

Resident Trust Account. Instead, upon information and belief, Heartland allocates any further money received towards the resident's nursing home bill as a "credit balance" in Heartland's own Accounts Receivable.

41.    The "credit balance" is never actually applied to the resident's nursing home bill, or returned to the Resident Trust Account. Rather, the money is keep as a "credit balance" until the resident dies, at which time, the money is dispersed by check to the decedent's relatives. Upon information and belief, records reflecting the dispersal of these unused "credit balances" to the relatives of deceased residents can be found in Heartland's Accounts Payable Department.

42.    If the money being held as a "credit balance" in Heartland's Accounts Receivable and the money in the Resident Trust Account were combined, an individual would be ineligible for Medicaid, as the total amount of money would exceed Medicaid's asset limits.

43.    When the West Virginia Department of Health and Human Resources Medicaid Office checks an individual's assets in order to determine Medicaid eligibility, however, the Office only looks at the Resident Trust Account. The Medicaid Office would not know to check the individual's hidden assets in the "credit balance" portion of Heartland's Accounts Receivable.

44.    Heartland does not inform the West Virginia Department of Human Resources Medicaid office when the money being held as a "credit balance" combined with the money in the Resident Trust Account exceeds Medicaid's asset limitation, nor are employees of Heartland allowed to inform the Office about the "credit balances." Resident money that is being held in as a "credit balance" is never revealed because in so doing, the Medicaid Office would realize that residents were over asset limitations and rescind the individual's Medicaid benefits.

45.    Over the course of her employment, Relator, Mrs. Brumfield, verbally informed

11

various supervisors and Heartland personnel regarding her concerns about accounting procedures; however, Mrs. Brumfield was consistently told to ignore the situation and to continue placing resident funds as credits in Heartland's Accounts Receivable.

46.     Because Manor Care was aware of the consequences of filing false or fraudulent Medicaid claims, and, because of its involvement in establishing policy, implementing policy, and overseeing Heartland's activities, Manor Care knew or should have known about Heartland's asset hiding. Despite this knowledge, however, Manor Care failed to correct Heartland's conduct.

### False and Fraudulent Submission of Pre-admission Screening Forms

47.     Heartland has submitted, and, on information and belief, continues to submit, claims for Medicaid benefits on behalf of residents who have not been properly designated as requiring nursing home care as a medical necessity. Specifically, Heartland maintains a system whereby the pre-admission screening forms, which are used to determine whether nursing home care is a medical necessity, are improperly completed.

48.     Heartland begins collecting Medicaid benefits as soon as an individual enters the facility, despite the fact that, on some occasions, pre-admission screening forms are not completed prior to or concurrent with an individual's admission to the facility; instead, the forms are completed as much as three to five weeks after an individual had been admitted as a resident.

49.     On other occasions, Heartland totally fails to complete pre-admission screening forms for residents.

50.     In addition, although pre-admission screening forms are required to be completed and signed by a physician, upon information and belief, Heartland has an arrangement with a physician whereby Heartland keeps a supply of blank, pre-signed forms, which facility employees later fill-out

without physician supervision.

51.     Finally, pre-admission screening forms are not updated when an individual's medical condition changes.

52.     Given Manor Care's role in establishing operating policies and procedures for Heartland, overseeing and monitoring Heartland's activities, conducting audits and risk management assessments, and its awareness of the penalties for filing false or fraudulent Medicaid claims, Manor Care knew or should have known about Heartland's mishandling of pre-admission screening forms. Despite this knowledge, Manor Care failed to correct Heartland's conduct.

## COUNT I
### Violation of 31 U.S.C. § 3729(a)(1)

53.     Plaintiffs repeat the allegations of Paragraphs 1 through 52 of this Complaint as though fully set forth here.

54.     Upon information and belief, Defendants presented, or caused to be presented, to the United States Government false or fraudulent claims for Medicaid benefits with knowledge of their falsity, or in deliberate ignorance of the falsity or fraudulent nature of said claims, or in reckless disregard to facts and conditions that would indicate, that said claims were false or fraudulent and caused payments for said claims to be made by the United States Government.

55.     By reason of the violation of 31 U.S.C. § 3729(a)(1), Defendants have knowingly or recklessly damaged the United States Government in an as yet undetermined amount.

## COUNT II
### Violation of 31 U.S.C. § 3729(a)(2)

56.     Plaintiffs repeat the allegations of Paragraphs 1 through 55 of this Complaint as though fully set forth here.

13

57.     Upon information and belief, Defendants made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim for Medicaid benefits paid or approved by the United States Government with knowledge of said claims falsity or fraudulent nature, or in deliberate ignorance of the falsity or fraudulent nature of said claims, or in reckless disregard to facts and conditions that would indicate, that said claims were false or fraudulent and caused payments for said claims to be made by the United States Government.

58.     By reason of the violation of 31 U.S.C. § 3729(a)(2), Defendants have knowingly or recklessly damaged the United States Government in an as yet undetermined amount.

## COUNT III
## Violation of 31 U.S.C. § 3729(a)(3)

59.     Plaintiffs repeat the allegations of Paragraphs 1 through 58 of this Complaint as though fully set forth here.

60.     The Defendants in performing the acts set forth above, conspired to defraud the United States Government in violation of 31 U.S.C. § 3729(a)(3) by getting false or fraudulent claims allowed or paid to the damage of the United States Government.

## COUNT IV
## Injunctive Relief

61.     Plaintiffs repeat the allegations of Paragraphs 1 through 60 of this Complaint as though fully set forth here.

62.     Defendants must be enjoined, preliminarily and permanently, from filing false claims for Medicaid benefits.  Specifically, Defendants must be enjoined from hiding resident income and assets by placing funds received on behalf of residents into Heartland's Accounts Receivable, rather than, the Resident Trust Account, and from falsely and fraudulently completing pre-

14

admission screening forms, which are needed to determine whether nursing home care is a medical necessity.

63.     Plaintiffs have no adequate remedy at law or otherwise for the harm and damage resulting or which will result from Defendants' actions.

64.     Plaintiffs have suffered and will continue to suffer irreparable harm, damage, and injury unless and until the aforementioned acts and conduct of Defendants are enjoined.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, the United States of America, ex rel. Matilda J. Brumfield pray that judgment be entered against the Defendants and the following relief granted:

1)     In an amount, presently indeterminable, upon Counts I, II, and III, for violations of 31 U.S.C. § 3729(a)(1), (2) and (3) a sum duly trebled in addition to a fine of not less than $5,000 per violation and not more than $10,000, together with attorneys' fees and costs;

2)     A preliminary and permanent injunction as follows:

   a)     Prohibiting Defendants from hiding assets of residents as a means of affecting their alleged eligibility for Medicaid;

   b)     Prohibiting Defendants from falsely and fraudulently completing pre-admission screening forms;

3)     Actual damages in the form of monies improperly and fraudulently obtained by Defendants from Medicaid funds;

4)     Pre-judgment and post-judgment interest as allowed by law; and

5)     Such further and additional relief at law or in equity that this Court may deem appropriate or proper.

PLAINTIFFS, UNITED STATES ex rel. MATILDA J. BRUMFIELD, INDIVIDUALLY,

DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

UNITED STATES OF AMERICA, ex rel.
MATILDA J. BRUMFIELD,

Plaintiffs,

By Counsel:

Rebecca A. Betts (W. Va. Bar No. 0329)
Philip J. Combs (W. Va. Bar No. 6056)
Ann M. Oxenham (W. Va. Bar No. 9600)
ALLEN GUTHRIE MCHUGH & THOMAS, PLLC
500 Lee Street, East, Suite 800
P. O. Box 3394
Charleston, West Virginia 25333-3394
(304) 345-7250

16

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

United States of America, ex rel. Matilda J. Brumfield

## DEFENDANTS

Heartland of Charleston and Manor Care, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   **Kanawha**
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE:   IN LAND CONDEMNATION CASES, USE THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)

Rebecca A. Betts
Philip J. Combs
Ann M. Oxenham
Allen Guthrie McHugh & Thomas, PLLC
500 Lee Street, East, Suite 800
P.O. Box 3394
Charleston, WV 25333-3394

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION   (place an x in one box only)

☒ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES   (place an x in one box for plaintiff and one box for defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated or Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commercial/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty |  | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other |  |  | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property |  ☐ 550 Civil Rights |  |  |  |
|  |  ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
☐ 2 Removed from
☐ 3 Remanded from
☐ 4 Reinstated or
☐ 5 Transferred from another district
☐ 6 Multidistrict
☐ 7 Appeal to District Judge from Magistrate

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This is a civil action for damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729 to 3733.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE   **09/13/05**

SIGNATURE OF ATTORNEY OF RECORD
*Ann M. Oxenham*

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse
(Rev. 3/99)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.  (a) Plaintiffs – Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and Box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.  Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  Nature of Suit. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.  Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing dates.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

VI.  Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII.  Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  Related Cases. This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

Date and Attorney Signature. Date and sign the civil cover sheet.